UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

WALLACE NEAL o/b/o
A.T. a minor child,
    Plaintiff,

v.                              Case No. 2:10-CV-324-FtM-DNF

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**
    Defendant.
_____/

## OPINION AND ORDER[1]

Plaintiff's mother, Sharon Thompson, filed an application for (childhood) Supplemental Security Income[2] (SSI) on behalf of her minor son (Plaintiff) on September 9, 1999, alleging an onset date of June 19, 1998 (Tr. 101-03). On October 13, 1999, the Commissioner granted Plaintiff disability benefits effective August 1, 1999, because of speech, language delays and a learning disorder which the Commissioner had determined met the requirements for Listing 111.09 (Tr. 59).

Pursuant to a continuing disability review, the Commissioner found Plaintiff's disability had ceased as of September 1, 2005 (Tr. 58, 79-80, 82-88, 92-95). Wallace Neal, Plaintiff's grandfather and legal guardian, requested reconsideration by a disability hearing officer, who reviewed the cessation and found that Plaintiff was no longer disabled (Tr. 57, 81). Plaintiff's grandfather requested a hearing before an administrative law judge (ALJ) (Tr. 55-56), which

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated November 2, 2010 (Doc.# 18).

[2] The disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

was held on October 22, 2008 (Tr. 392-450). On January 21, 2009, Administrative Law Judge Dawn B. Lieb issued her decision finding that Plaintiff's disability had ceased as of September 1, 2005 (Tr. 37-54). Plaintiff's grandfather requested review by the Appeals Council (AC) (Tr. 35-36), which was denied on March 18, 2010 (Tr. 2-5). This case is now ripe for review under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g). For the reasons set out herein, the decision is **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

**I.   SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

As in all Social Security disability cases, a claimant bears the burden of proving he is disabled within the meaning of the Social Security Act. See 42 U.S.C. § 423(d)(5)(A); 1385c(a)(3)(H)(I); 20 C.F.R. § 416.912(a), (c) (2010); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). This burden of proof on the claimant also exists for childhood SSI disability claims. The definition of childhood SSI disability provides that a claimant under the age of eighteen years shall be considered disabled if the claimant has a medically determinable physical or mental impairment which results in "marked and severe functional limitations," and that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The regulations define the statutory standard of "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.902; 20 C.F.R. §§ 416.906, 416.924(a), 416.926a(a); and 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listing of Impairments).

The Commissioner has established a specific sequential evaluation process for determining whether a child claimant is disabled or not disabled. 20 C.F.R. § 416.924. The three-step process requires a child (or his guardian) to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing level severity, that is, the impairment(s) meets or medically equals the severity of a set of criteria for an impairment in the listings, or functionally equals the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment (as in this case), the fact finder must determine if the child's impairment(s) meets or medically equals an impairment in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairment(s) does not meet or medically equal a listed impairment, the fact finder then must determine if the child's impairment(s) is functionally equivalent to the listings. 20 C.F.R. §§ 416.924(d), 416.926a (discussing functional equivalence). For the child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

The fact finder considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

There is also a statutory requirement that a disabled child's eligibility for continued disability benefits be reviewed periodically. 20 C.F.R. § 416.994a(a). In determining whether disability continues, consideration first will be given to whether there has been medical

improvement in the child's impairment(s). 20 C.F.R. § 416.994a(a)(1). Medical improvement is "any decrease in the severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).

If there has been no medical improvement, the child will be found still disabled. 20 C.F.R. § 416.994a(a)(1). If there has been medical improvement, "we will consider whether the impairment(s) you had at the time of our most recent favorable determination or decision now meets or medically or functionally equals the severity of the listing it met or equaled at that time. 20 C.F.R. § 416.994a(a)(1). If so, the child will be found still disabled, unless certain exceptions apply. 20 C.F.R. § 416.994a(a)(1). If not, the child's current impairments will be considered to determine whether they are disabling under the rules in 20 C.F.R. §416.924 ("How we determine disability for children").

In accordance with the regulations, the ALJ evaluated the evidence in this case and determined that there had been medical improvement beginning September 1, 2005, in Plaintiff's impairments since his most recent favorable decision (comparison point decision, or CPD) on October 6, 1999 (Tr. 43-44, findings 1-3). At the time of the CPD, the claimant had the following medically determinable impairments: extreme limitation in communication function, developmental delay, a history of frequent falls and hypertonia and an attention deficit hyperactivity disorder (Tr. 43). These impairments were found to functionally equal listing(s) 111.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that as of September 1, 2005, there had been a decrease in the medical severity of the impairments after the CPD (Tr. 44) and that such impairments did not meet or

medically equal section 119.09 or any other section the Listing of Impairments, as of September 1, 2005 (Tr. 47, finding 4). The ALJ further found that as of September 1, 2005, the impairments Plaintiff had at the time of the CPD no longer equaled the Listing of Impairments (Tr. 47, finding 6).

The factual findings of the Commissioner are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1422 (1971). Substantial evidence is defined as more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. See *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004). It is not the role of the appellate court to decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Crawford*, 363 F.3d at 1158-59; *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

II.  **REVIEW OF FACTS**

Plaintiff (A.T.) was born on June 19, 1998. At the time of the hearing, Plaintiff was a fifth grade student with no past work history (Tr. 47). In the determination dated October 6, 1999, Plaintiff was found to be disabled as of August 1, 1999, due to extreme limitation in communication function, developmental delay, history of frequent falls, hypertonia and attention deficit hyperactivity disorder (Tr. 43). On September 23, 2005, it was determined that Plaintiff, who was then 7 years old, was no longer disabled (as of September 1, 2005) (Tr. 40). Mr. Neal (Plaintiff's grandfather) has alleged a disability on behalf of Plaintiff (A.T.), commencing and

continuing at least since September 1, 2005.

At the time of the hearing, Plaintiff was ten years old (Tr. 402). Plaintiff's grandfather alleged Plaintiff continued to be irritable, had trouble getting along with others, had poor coordination, and exhibited bad behavior (Tr. 405-06).

After a careful review of the medical evidence and the testimony at the hearing, the ALJ found Plaintiff experienced medical improvement in his impairments as of September 1, 2005 (Tr. 44, Finding no. 3). The ALJ reviewed Plaintiff's six domains of function and determined Plaintiff had: no limitation in acquiring and using information; less than marked limitation in attending and completing tasks; marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and no limitation in health and physical well-being (Tr. 50-54). Accordingly, the ALJ found that as of September 1, 2005, Plaintiff did not functionally meet a Listing of Impairment (Tr. 47, Finding no. 6) and Plaintiff's disability had ceased and he remained not disabled since that date (Tr. 54, Finding no. 10).

The record shows Plaintiff began treatment at the Lee Mental Center (formerly Ruth Cooper Center) (LMC) beginning in December 2005 because of problems with focusing and reports of misbehaving (Tr. 274-81).

In February 2006, M. Zenilde A. M. De Lima, M.D., a doctor at LMC, prescribed Plaintiff Adderall and recommended he take 5 mg a day for a week and 10 mg a day thereafter (Tr. 260-61).

In March 2006, Plaintiff's grandfather reported the Adderall had been helping Plaintiff behave, Plaintiff's mood was pleasant, and he seemed happy (Tr. 257). Dr. De Lima continued

Plaintiff on 10 mg per day of Adderall (Tr. 258).

In April 2006, Plaintiff was able to focus well in school and Dr. De Lima continued him on 10 mg per day of Adderall (Tr. 255-56).

In May 2006, Plaintiff's grandfather reported that Plaintiff was getting good grades in school, but he was becoming more hyperactive and inattentive in the afternoons (Tr. 253). Dr. De Lima increased Plaintiff's Adderall prescription to 15 mg per day to target Plaintiff's hyperactivity (Tr. 254).

Plaintiff did not return to LMC until August 2006, when Plaintiff's grandfather indicated Plaintiff's behavior worsened significantly over the summer because he did not give Plaintiff his medication (Tr. 251). Plaintiff's grandfather indicated that once he restarted Plaintiff on Adderall, Plaintiff's behavior improved (Tr. 251).

In September 2006, despite reporting Plaintiff was talking back in class, Plaintiff's grandfather reported Plaintiff had been getting good grades and was tested for the gifted program (Tr. 247). Dr. De Lima increased Plaintiff's Adderall prescription to 20 mg per day to target his attention issues (Tr. 249).

In October 2006, Plaintiff's grandfather stated Plaintiff was doing much better since his Adderall was increased and was listening more at school and getting good grades (Tr. 243). Dr. De Lima continued Plaintiff on 20 mg per day of Adderall (Tr. 246).

In January 2007, Plaintiff's grandfather indicated Plaintiff was having behavioral issues at school, but behaved well at home (Tr. 241). Dr. De Lima increased Plaintiff's Adderall prescription to 25 mg per day to target Plaintiff's hyperactivity and problems focusing (Tr. 242).

In February 2007, Plaintiff's grandfather indicated Plaintiff focused better after his Adderall was increased, but then began having difficulty focusing again (Tr. 239). Dr. De Lima increased Plaintiff's Adderall to 30 mg per day again to target Plaintiff's problems with focusing (Tr. 240).

In April 2007, Plaintiff's grandfather and Plaintiff indicated everything had been going well and Plaintiff was receiving good grades (Tr. 237). Dr. De Lima continued Plaintiff on 30 mg per day of Adderall (Tr. 238).

In June 2007, Plaintiff's grandfather reported things as going well and Plaintiff attended summer camp with no complaints (Tr. 235). Dr. De Lima continued Plaintiff on 30 mg of Adderall per day (Tr. 236). Plaintiff did not return to LMC until October 2007 when Plaintiff's grandfather reported he had taken Plaintiff off of Adderall during the summer and the beginning of the school year, which resulted in behavioral issues and bad grades (Tr. 233). Plaintiff's grandfather stated that he restarted Plaintiff on his medication and Plaintiff's behavior again improved and a note from Plaintiff's teacher indicated the same (Tr. 233). Dr. De Lima continued Plaintiff on 30 mg of Adderall per day (Tr. 234).

In December 2007, Plaintiff's grandfather indicated Plaintiff had been misbehaving in school and receiving bad grades (Tr. 231). In January, February, and April 2008, Plaintiff's grandfather reported Plaintiff's attention span had improved, he had not had problems in school, his grades were good, and Dr. De Lima continued him on the same dosages of medication (Tr. 226-30).

In June 2008, Plaintiff's grandfather reported Plaintiff had gotten into trouble in school and was more hyperactive and impulsive (Tr. 224). Dr. De Lima increased Plaintiff's Adderall

prescription to 40 mg per day to target Plaintiff's hyperactivity and impulses (Tr. 225).

In July 2008, Plaintiff's grandfather indicated he had not started Plaintiff on the higher dosage of Adderall and Dr. De Lima encouraged him to do so as soon as possible to help control Plaintiff's hyperactivity (Tr. 222-23).

In September 2008, Plaintiff's grandfather reported that although Plaintiff was doing well in school, Plaintiff's teachers thought he exhibited symptoms of Asperger's Syndrome (Tr. 220).

Alfred G. Jonas, M.D., a medical expert in psychiatry, reviewed the evidence and testified at the hearing on October 22, 2008, as to his opinion on the severity of Plaintiff's impairments (Tr. 435-48). Dr. Jonas opined that although there was some evidence in the record to support the diagnoses of intrauterine drug exposure, developmental delays, and attention deficit disorder with hyperactivity, there was nothing in the record to support the diagnoses of Asperger's Syndrome or bipolar disorder (Tr. 435-36). Dr. Jonas opined that Plaintiff met a listing until June 2006, or a little before, but Plaintiff's medical records show that his behavior was normalizing due to medication after that time (Tr. 436-38). Dr. Jonas' general opinion was that although Plaintiff had deterioration in his ability to behave and focus, the medical evidence indicated those issues were corrected when Plaintiff's medication was increased to keep up with his growth and when Plaintiff's grandfather restarted Plaintiff on his medication after a period of not administering it (Tr. 440-48). Dr. Jonas further opined that Plaintiff did not functionally meet a listing after June 2006 by rating him in the six domains as follows: no impairment in acquiring and using information, manipulating objects, and health and physical well-being; between no impairment and less than marked impairment in attending and completing tasks and

caring for himself; and between no impairment, less than marked impairment, and occasionally marked impairment that decreased as medication is increased, in interacting and relating with others (Tr. 439).

In a letter dated September 26, 2008, Ms. Susan Fansler, Plaintiff's gifted teacher, stated that during the 2005/2006 school year Plaintiff had a hard time staying on task and was easily distracted (Tr. 123). Ms. Fansler stated that during the 2006/2007 school year, Plaintiff functioned much better in a smaller group, but was still having some behavioral and concentration problems (Tr. 123). In the last paragraph of her letter dated September 28, 2008, Ms. Fansler said "[Plaintiff] cannot function appropriately at school with out the aide [sic] of his medication. It does help him to concentrate and it impedes his physical aggression toward other children. When [Plaintiff] is on the medication there is a marked improvement in his performance and behavior" (Tr. 123).

In November 2008, Plaintiff submitted the same letter from Ms. Fansler, still dated September 26, 2008 (Tr. 17, 121). The revised letter was identical to the original letter, except it replaced the quoted paragraph above with "I was aware of [Plaintiff's grandfather's] efforts to take [Plaintiff] off of medication. While the medication definitely helps, [Plaintiff] has never been stable, nor has his behavior on medication come close to an acceptable level. Despite his medication, [Plaintiff] continues to be very disruptive, as previously referenced in this letter. It is my professional opinion that [Plaintiff] cannot and has not functioned appropriately in school, even on his medication" (Tr. 17, 121).

After the ALJ issued his decision, Plaintiff submitted additional evidence to the Appeals Council, including a report from the Children's Autism Treatment Specialists (CATS) and a

Section 504 academic accommodation plan. (Tr. 19-32). In December 2008, CATS conducted interviews with Plaintiff's teachers and made a classroom observation (Tr. 20-27). Plaintiff's teachers indicated Plaintiff had trouble paying attention and could be cruel to his classmates without seeming to realize the impact that hurt feelings leave behind (Tr. 24). Ms. Fansler also reported Plaintiff was scheduled to be placed in the gifted class full time instead of part-time (Tr. 24).

Using a Childhood Autism Rating Scale of 1, meaning no autism, to 4, meaning severe autism, in fourteen different categories, Laura P. O'Sullivan, a Board Certified Behavior Analyst, indicated Plaintiff was a 3 or higher in only the two categories of relating to people and emotional responses (Tr. 21-22). Dr. O'Sullivan gave Plaintiff an overall rating of 2, which indicated mild autism (Tr. 22). Specifically, Dr. O'Sullivan reported that Plaintiff "show[ed] few symptoms or only a mild degree of autism spectrum symptoms. This rating, combined with [Plaintiff's] advanced intellectual functioning, a review of the medical records, and the results of a school observation indicates that [Plaintiff] has Asperger's Syndrome" (Tr. 22). An undated addendum to Dr. O'Sullivan's report confirmed her diagnosis of Asperger's Syndrome (Tr. 27).

In February 25, 2009, a Section 504 academic accommodation plan was created by Plaintiff's school based on Dr. Sullivan's diagnosis of Asperger's (Tr. 30-32). The plan included Plaintiff's teachers using clear and simple directions and non-verbal signs to keep Plaintiff focused, Plaintiff being seated near the teacher away from distractions, Plaintiff working with peers on social skills, and Plaintiff's teachers reviewing the classroom rules with Plaintiff (Tr. 31-32). The accommodation plan was to be implemented for one year (Tr. 31-32). There is no evidence of record regarding the outcome of the accommodation plan.

## III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

### A. THE ALJ DID NOT ERR BY FAILING TO CONSIDER EVIDENCE SUBMITTED SUBSEQUENT TO THE HEARING, BUT PRIOR TO HER DECISION

The ALJ indicated in her decision that although the record was left open for submission of additional evidence after the hearing, no such evidence was received by the date of her decision (Tr. 40). On November 14, 2008, subsequent to the hearing but prior to the ALJ's decision, Plaintiff submitted a facsimile to the ALJ of a revised letter written by Ms. Susan Fansler, Plaintiff's gifted teacher for three years (Tr. 16). The revised letter was identical to Ms. Fansler's original letter except for the last paragraph which more clearly expressed her opinion that Plaintiff had not and could not function appropriately in school, even while on his medication (Tr. 121). Plaintiff argues that the ALJ did not consider this new evidence in her decision (Tr. 8). Consequently, Plaintiff argues that the case should be remanded because the ALJ failed to review and analyze the entire record before rendering a decision (Doc. 24 p. 10).

In reviewing social security cases, the Court has a responsibility to scrutinize the entire record to "determine [the] reasonableness of [the] decision reached."*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1989). This includes examining evidence favorable as well as unfavorable to the ALJ's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990). Nevertheless, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgement for that of the Commissioner. *Martin*, 894 F.2d at 1529.

In this case, contrary to Plaintiff's argument, as well as the ALJ's statement that no subsequent evidence was received after the hearing, Ms. Fansler's revised letter was received by the ALJ prior to her decision and it was included in the record before the ALJ (Tr. 121). In fact, the ALJ explicitly discussed and cited to Ms. Fansler's revised letter (Tr. 47 citing Exhibit

E, p. 100 or Tr. 121). As the ALJ received and explicitly discussed the revised letter, the Court finds Plaintiff's argument that the ALJ erred by failing to consider Ms. Fansler's revised letter wholly without merit.

Plaintiff also contends that the ALJ erred by relying primarily on the opinion of Dr. Jonas, who Plaintiff argues based his testimony principally on Ms. Fansler's original letter (Doc. 24 p. 9). Plaintiff argues that Dr. Jonas' opinion should not be accorded substantial, or possibly any, weight by the ALJ because it was based on a faulty, misinterpretation of Ms. Fansler's first letter. (Doc. 24 p. 9).

The record indicates, however, that Dr. Jonas did not solely rely on Ms. Fansler's letter in proffering his opinion, but considered all available evidence, i.e., treatment notes and school records (Tr. 435-48). For example, Dr. Jonas discussed his consideration of treatment notes from LMC in determining that Plaintiff no longer met a listing and did not have Asperger's Syndrome (Tr. 437-38, 441, 443-44). In addition, Dr. Jonas also discussed his consideration of teacher observations and questionnaires in formulating his opinion (Tr. 444). Dr. Jonas's opinion was not exclusively based on Ms. Fansler's original letter, but was substantially supported by other evidence. For these reasons the Court does not find that the ALJ erred by relying on the opinion of Dr. Jonas in reaching her decision.

### B. THE APPEALS COUNCIL DID NOT ERR BY DENYING REVIEW OF THE ALJ'S DECISION

Plaintiff contends that the Appeals Council erred by failing to consider new evidence submitted after the ALJ's decision that shows that Plaintiff was diagnosed with Asperger's Syndrome and that his school created a Section 504 accommodation plan in light of this diagnosis (Doc. 24 p. 11). The Defendant counters that this evidence was submitted to the

Appeals Council and was incorporated into the evidence when the Appeals Council denied review of Plaintiff's case (Doc. 26 p. 18).

Plaintiff is unclear whether he is seeking a remand under sentence six or sentence four of 42 U.S.C. §405(g). A sentence six remand is proper only when new and material evidence that was not incorporated into the administrative record comes before the district court. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262, 1267 (11th Cir. 2007) (citing *Milano v. Bowen*, 809 F.2d 763, 766-67 (11th Cir. 1987)). "Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council." *Id.* at 1269. In this case, the record indicates that the Appeals Council received and considered the new evidence submitted by Plaintiff, but found that the new information was not a basis for changing the ALJ's decision (Tr. 3). For this reason, the Court will not remand under sentence six.

Next, the Court must determine whether remand is appropriate under sentence four. In *Ingram*, the Eleventh Circuit held that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262. Thus, the Court must review whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole, including the new evidence submitted to the Appeals Council. *Hummel v. Astrue*, 2007 WL 2492460, at *7 (M.D. Fla. Aug. 30, 2007). If the denial of benefits is not supported by substantial evidence, the Court must remand pursuant to sentence four.

In this case, the record as a whole provides substantial evidence that Plaintiff's impairments do not meet or medically equal a listed impairment, nor result in "marked"

limitations in two domains of functioning or result in an extreme limitation in one domain. The record indicates that Plaintiff had no limitation in the domain of acquiring and using information 20 C.F.R. § 416.926a(g). Plaintiff was in the gifted program and had a higher than average IQ in verbal comprehension and perceptual reasoning, and an average full scale IQ of 109 (Tr. 50, 350). In addition, during the 2005/2006 school year, Plaintiff was working at or above his grade level and received an "A" in Math and Reading and a "B+" in Language Arts (Tr. 306). Even the revised letter from Ms. Fansler noted that Plaintiff was very good at math and logic and he was a perfectionist in his work (Tr. 17).

Laura White, Plaintiff's 4th grade teacher, also reported Plaintiff was intelligent which was consistent with all other accounts (Tr. 124). In addition, a teacher questionnaire from August 2008 indicated Plaintiff had no problems in the domain of acquiring and using information and he met the current instructional reading, math, and written language levels (Tr. 129-30). A July 2005 speech and language evaluation also showed Plaintiff's articulation was 95-100% and he had normal scores for expressive and receptive skills in vocabulary and articulation (Tr. 44, 347). A January 2006 report from The Attention Disorder & Related Disorders Clinic (ADRDC) also noted that Plaintiff's academic accomplishments were excellent (Tr. 305). Further, Plaintiff and his grandfather reported to LMC that when Plaintiff was on his medication he had received good grades (Tr. 228, 233, 237, 247).

Further, although there is evidence that Plaintiff had trouble paying attention, focusing, and waiting his turn, treatment notes from LMC show that every time Plaintiff was having trouble with hyperactivity, focusing, and behavioral problems, his dosage of Adderall was increased with positive results (Tr. 220-69). Plaintiff's grandfather indicated that although Plaintiff had severe behavioral problems when he took Plaintiff off of his medication, Plaintiff's

behavior improved when he was put back on his medication (Tr. 169, 233, 251). This is consistent with Plaintiff's grandfather's statement at the initial cessation hearing in June 2006 that Plaintiff began improving three to four months prior, due to medication (Tr. 153, 160). Substantial evidence supports the ALJ's finding that Plaintiff had less than marked limitation in the domain of attending and completing tasks. 20 C.F.R. § 416.926a(h).

Plaintiff had difficulty getting along with his classmates, following the rules, and making friends (Tr. 52). However, as discussed above, treatment notes and Plaintiff's grandfather's statements indicate Plaintiff's behavior was significantly improved when he was taking the correct amount of medication (Tr. 220-81). In addition, Plaintiff's grandfather testified Plaintiff had a friend that he would speak to on the phone to discuss homework (Tr. 410). Further, although some problems were reported, Plaintiff still participated in social activities, such as summer camp, church, and organized sports (Tr. 235, 408-09). Thus, Plaintiff's behavior while on medication did not rise to the level of an extreme limitation in this domain. Substantial evidence supports the ALJ's finding that Plaintiff did not have an extreme limitation, but rather a marked limitation in the domain of interacting and relating with others. 20 C.F.R. § 416.926a(i).

Plaintiff's grandfather reported Plaintiff was playing goalie on a soccer team (Tr. 408-09). In addition, an August 2008 Teacher Questionnaire indicates Plaintiff had no problems moving about and manipulating objects and was functioning at an age-appropriate level in this domain (Tr. 133). Substantial evidence supports the finding that Plaintiff had no limitation in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(j).

Plaintiff's grandfather testified that Plaintiff bathed himself and was capable of caring for his own personal needs (Tr. 53, 220-82, 304-22, 349-56). In addition, the medical evidence

does not indicate Plaintiff had limitations with his sleeping and eating habits (Tr. 220-82, 304-22, 349-56). Substantial evidence supports the finding that Plaintiff had no limitation in the domain of caring for himself. 20 C.F.R. § 416.926a(k).

Additionally, Plaintiff's grandfather testified and medical records indicate that Plaintiff's health was good and his medication had the desired effect when administered properly and changed to compensate for his growth (Tr. 54, 220-69). Substantial evidence supports the finding that Plaintiff had no limitation in the domain of health and physical well-being. 20 C.F.R. § 416.926a(l).

Plaintiff's grandfather also indicated in an April 2005 function report that Plaintiff had no problems seeing, hearing, talking, or communicating (Tr. 136-40). Further, the medical evidence does not indicate Plaintiff had any health or medical issues, other than those discussed above, and there is no evidence of any serious illnesses or hospitalizations (Tr. 220-82, 308).

In considering the new evidence presented before the Appeals Council, the Court notes that a diagnosis alone does not establish that the condition resulted in "marked" limitations or an "extreme" limitation in any of the six functional domains. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition."). Moreover, the possibility of such diagnosis was discussed at length at the hearing and Dr. Lucas opined that based on his review of the record, Asperger's was not an appropriate diagnosis (Tr. 435-36). In fact, the ALJ, in her decision, considered a possible Asperger's diagnosis, thus undermining Plaintiff's contention that such evidence would have changed the administrative result (Tr. 49).

Furthermore, the Court notes that accommodation plans on their own are not enough to prove a claimant is disabled. Instead, such plans are used, along with all of the other evidence

of record, to help determine if a child has a marked or severe impairment. SSR 09-2p. Here, Plaintiff's accommodations were implemented to assist Plaintiff in establishing and maintaining social relations and to assist him with staying focused and not rushing through class work (Tr. 30-32). The ALJ acknowledged Plaintiff had trouble with paying attention and staying focused (Tr. 50-51), and properly determined Plaintiff had a less than marked limitation in the domain of attending and completing tasks (Tr. 51). The ALJ also noted Plaintiff had difficulty getting along with his classmates, following rules, and making friends (Tr. 51-52), and properly determined Plaintiff had marked limitation in the domain of interacting and relating to others (Tr. 52). Thus, the additional evidence submitted to the Appeal Council would not have changed the outcome of the decision.

For these reasons, even considering the additional evidence submitted to the Appeals Court after the ALJ's decision, the Court finds that administrative record as a whole contains substantial evidence to support the denial of Plaintiff's claims. Therefore, remand is inappropriate under sentence four as well.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence and decided by the proper legal standards.

1. Judgment shall be entered pursuant to sentence four of 42 U.S.C. §405(g) **AFFIRMING** the decision of the Commissioner.

2. The Office of The Clerk is directed to enter judgment and close this case.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this ___26th___ day of September, 2011.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Parties and Counsel of Record